[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
09/22/99
THOMAS K. KAHN
CLERK

_____

No. 98-9328
Non-Argument Calendar
_____

D. C. Docket No. 1:96-CV-1842-HTW

D. BARRY SUTTON,

Plaintiff-Appellant,

versus

BELLSOUTH TELECOMMUNICATIONS, INC.;
BELLSOUTH TELECOMMUNICATIONS, INC.,
COMPETITIVE MANAGEMENT RESTAFFING
PLAN, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(September 22, 1999)**

Before COX, BLACK and MARCUS, Circuit Judges.

PER CURIAM:

Appellant Barry Sutton brought this action pursuant to the enforcement provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132. He claims that Appellee BellSouth Telecommunications, Inc. (the Company) terminated him in violation of the express provisions of the Competitive Management Restaffing Plan (the Restaffing Plan), which is an employee welfare benefit plan established and maintained pursuant to ERISA. The district court rejected Appellant's claims and granted summary judgment in favor of the Company and the other Appellees. The district court reasoned that the Company's decision to terminate Appellant occurred apart from the decision to offer him severance benefits under the Restaffing Plan and therefore did not trigger ERISA's remedial provisions. Based upon our review of the record, we affirm.

We exercise a complete and independent review of the district court's grant of summary judgment to determine whether there are any genuine issues of material fact which preclude judgment as a matter of law in favor of the moving party. *See Rayle Tech, Inc. v. Dekalb Swine Breeders, Inc.,* 133 F.3d 1405, 1409 (11th Cir. 1998).

The Company is engaged in an ongoing effort to reduce its management workforce to ensure it maintains its competitive advantage in the marketplace. As part of this effort, the Company utilizes a process known as the Management Panel

Evaluation Process (the Panel Process) to continually rank and classify employees to determine their relative abilities. Pursuant to the guidelines governing the Panel Process, the Company identifies the group, or "universe," of employees who will be considered for termination. A universe is a group of employees in a specific job grade who lack specific skills necessary to the Company, such as competitive market experience or market segment expertise. Employees within the relevant universe are then ranked by evaluators with at least six months' significant exposure to the employees within the preceding three-year period.

In May 1995, Charles Coe, the Group President of Customer Operations, determined that supervisory employees at job grade 64 in the customer operations organization, which included Appellant, lacked sufficient expertise in several areas, including competitive market experience and experience in the wireless communications industry. Coe decided that three vacancies were necessary to address this deficit and that the Company should offer severance pay and health insurance coverage for a specified period to employees who terminated employment to create vacancies to be filled by individuals with the needed critical skills. At Coe's request, the Vice-President of Human Resources, Rebecca Dunn, approved the use of the Restaffing Plan and sent the following memorandum (Dunn Memorandum) to Company officers:

3

a.	The [Restaffing Plan] provides for involuntary separation of a predetermined number of managers in a defined group, where the group has been identified as having a deficit in understanding of technology, market expertise, or competitive market intelligence.

b.	Under the [Restaffing Plan],
(1)	[C]reated vacancies must be backfilled with external hires,
(2)	[C]reated vacancies may not be used for lateral or promotional movement, and
(3)	[I]ncumbents in the defined groups will be rated utilizing the [Panel Process].

The Company thereafter identified 21 employees in the relevant universe to be evaluated by the Panel Process. Three individuals evaluated Appellant and he was subsequently offered severance benefits under the Restaffing Plan in exchange for agreeing to sign a release of all claims against the Company. Appellant appealed the Company's decision to terminate him pursuant to an internal review procedure established under the Restaffing Plan. His claim was denied and he subsequently signed a partial release to receive severance benefits.[1] Meanwhile, the Company filled Appellant's position by promoting a BellSouth employee rather than by seeking an external candidate for the position.

A beneficiary of an ERISA plan may bring an action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under

---

[1] The Company permitted Appellant to sign the release and agreed not to assert it as a bar to a lawsuit brought pursuant to ERISA, provided that the suit did not exceed the scope of the issues raised in the internal review procedure.

the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Additionally, a beneficiary may seek relief for breach of a fiduciary obligation for "any act or practice which violates any provision of [ERISA] or the terms of an ERISA plan." 29 U.S.C. § 1132(a)(3); *see also Varity Corp. v. Howe*, 116 S. Ct. 1065, 1076-77 (1996).

Appellant contends these remedial provisions provide him with a cause of action under federal law to challenge the decision to terminate him from employment. He contends the Restaffing Plan, which is governed by ERISA, incorporates the Panel Process by reference and thereby subjects his dismissal to review under ERISA. He argues the Restaffing Plan incorporates the Panel Process because: (1) the Dunn Memorandum discusses the termination process as part of the severance payments under the Restaffing Plan; and (2) the Restaffing Plan itself refers to the process for terminating employees.[2] Sutton therefore contends the Company violated his rights under ERISA by violating its guidelines for the Panel Process by: (1) improperly including him in the relevant universe of employees; (2) filling his position with a BellSouth employee rather than with an external candidate; (3) evaluating him with someone who had no personal

---

[2] For instance, the Restaffing Plan states that employees will be evaluated by a "procedure selected by the Participating Company." Additionally, the Restaffing Plan refers to a "rat[ing] and rank[ing]" process.

5

knowledge of his work; and (4) failing to afford a full or fair review of the Company's decision to terminate him.

We conclude that the termination process is not governed by ERISA because it occurred apart from and was distinct from the process to offer severance benefits to terminated employees. Significantly, those employees selected for termination are not even required to participate in the severance pay plan. They may choose not to participate in the plan, in which case they are terminated without benefits and may pursue other remedies against the Company.

Our conclusion is also supported by the general proposition that corporate managerial decisions are not governed by ERISA because they do not involve discretionary acts regarding plan administration. *See, e.g., Local Union 2134, United Mine Workers of America v. Powhatan Fuel, Inc.*, 828 F.2d 710, 713-714 (11th Cir. 1987) ("One assumes fiduciary status only when and to the extent that they function in their capacity as health plan fiduciaries, not when they conduct business that is not regulated by ERISA.") (quotation and citation omitted). In this case, Appellant is not seeking to recover benefits or to enforce or clarify his rights under the terms of a plan. He is seeking redress for the Company's decision to terminate him. Such an action does not exist under state law here because Georgia courts have refused to create a claim for wrongful termination of an at will

employee.  *See Borden v. Johnson*, 395 S.E.2d 628, 628-29 (Ga. Ct. App. 1990) (refusing, in the absence of a relevant statute, to create a wrongful termination claim for an at will employee).  We refuse to create such a claim under ERISA in this case because the termination decision occurred apart from the management or administration of the ERISA plan.  *See Varity Corp.*, 116 S. Ct. at 1072-1073.

In sum, the Company's termination decision did not involve any aspect of an ERISA plan.  We therefore affirm the district court's grant of summary judgment in favor of Appellees.

AFFIRMED.