Raymond A. LANFEAR, Terry Clark, Randall W. Clark, Antonio Fierros, and Jeffrey H. Thomson, Plaintiffs

v.

HOME DEPOT, INC., Robert L. Nardelli, Francis S. Blake, John L. Clendenin, Milledge A. Hart III, Kenneth G. Langone, Gregory D. Brenneman, Claudio X. Gonzalez, Thomas J. Ridge, Bonnie G. Hill, Lawrence R.

Johnston, Laban P. Jackson, Jr., Angelo R. Mozilo, Helen Johnson–Leipold, Richard H. Brown, Berry R. Cox, Home Depot FutureBuilder Administrative Committee, Home Depot FutureBuilder Investment Committee, Carol B. Tome, Ileana L. Connally, Rebecca I. Flick, Steven Taplits, Harry Taylor, Timothy M. Crow, Dennis M. Donovan, Frank Fernandez, and Reginald B. Garrett, Defendants.

Civil Action No. 1:07–CV–197–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 7, 2010.

Alfred G. Yates, Jr., Gerald L. Rutledge, Office of Alfred G. Yates, Jr., Pittsburgh, PA, Edwin J. Mills, Michael J. Klein, Stull Stull & Brody, Jeffrey M. Norton, Harwood Feffer LLP, Robert I. Harwood, Wechsler Harwood, Thomas J. McKenna, Gainey & McKenna, New York, NY, Lisa T. Millican, Greenfield Millican, P.C., Atlanta, GA, for Plaintiffs.

Darren A. Shuler, David Tetrick, Jr., Joseph P. Rockers, Michael R. Smith, King & Spalding, LLP, J. Timothy Mast, John J. Dalton, Thomas B. Bosch, Troutman Sanders, LLP, Atlanta, GA, Paul Allan Straus, King & Spalding, LLP, New York, NY, for Defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This putative class action, brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, is before the court on Defendants' motion to dismiss Plaintiffs' Third Amended Complaint [Doc. 87] and Defendant Robert L. Nardelli's Motion to Dismiss Plaintiffs' Third Amended Complaint [Doc. 88]. The action is brought by Plaintiff Raymond A. Lanfear and other former Home Depot employees (collectively, "Plaintiffs") who were participants in The Home Depot FutureBuilder defined contribution plan (the "Plan"), an employee pension benefit plan governed by ERISA. Plaintiffs bring the action against The Home Depot, Inc. ("Home Depot"); current and former members of The Home Depot FutureBuilder Investment Committee and Administrative Committee, and fifteen current and former members of Home Depot's Board of Directors (collectively, "Defendants"). For the following reasons, Defendants' Motion to Dismiss [Doc. 87] is GRANTED, and Defendant Nardelli's Motion to Dismiss [Doc. 88] is DISMISSED AS MOOT.[1]

### I. Background

#### A. Initial Matters

In ruling on the instant motion to dismiss, the well-pleaded averments of the

---

1. Plaintiffs' motion for oral argument [Doc. 106] is accordingly DISMISSED AS MOOT.

Third Amended Complaint are presumed to be true. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 842 (11th Cir.2004). The Court may also reference documents attached to the complaint. *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368–69 (11th Cir.1997). Where a document is attached to a motion to dismiss or responses thereto, the Court may consider it "only where the attached document is 'central to the plaintiff's claim' and is 'undisputed' in the sense that 'the authenticity of the doc-

ument is not challenged.'" *Woods v. Southern Co.*, 396 F.Supp.2d 1351, 1359 (N.D.Ga.2005) (Story, J.) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir.2002) and *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir.2005)). In the instant case, Plaintiffs have attached numerous exhibits to the Third Amended Complaint.[2] These exhibits are filed under seal. Defendants attached one exhibit to their Motion to Dismiss, Home Depot's February 3, 2002 Form 10–K Securities and Exchange Com-

---

**2.** The following documents are attached to the Third Amended Complaint:

1. The Home Depot FutureBuilder Plan Amendment and Restatement Effective July 1, 2004
2. 2005 Summary Plan Description
3. Investment Policy Statement, April 22, 2002
4. Home Depot News Release, June 16, 2006
5. Home Depot News Release, Dec. 6, 2006
6. Summary of Interview with Daniel F. Shea, Nov. 21, 2008
7. Letter from Securities and Exchange Commission ("SEC"), Dec. 10, 2008
8. Michael J. Alderson report to Claim Subcommittee of the Administrative Committee, Dec. 12, 2008
9. Summary of Interview of Matthew E. Fishbein and Jennifer Cowan, Nov. 25, 2008
10. November 25, 2008 "Exhibits"
11. *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230 (11th Cir.2008)
12. Home Depot News Release, Feb. 22 (no year stated but apparently 2005)
13. Summary of Interview with John Connor, Jan. 21, 2009
14. "Home Depot Closing Stock Price" spreadsheet and graphs
15. Home Depot SEC filing, Form 10–K filed April 11, 2005
16. Home Depot SEC filing, Form 10–K filed March 29, 2006
17. Home Depot SEC filing, Form 10–K filed March 29, 2007
18. *Michael Davis v. Home Depot* complaint filed with the United States Occupational Safety & Health Organization, notarized June 22, 2005
19. Attorney report to the Claim Subcommittee of the Administrative Committee, Jan. 21, 2009
20. Minutes of Claim Subcommittee meeting, Jan. 26, 2009
21. Minutes of Claim Subcommittee meeting, Feb. 13, 2009
22. Reasons for Subcommittee's denial of Claimant Lanfear, T. Clark and R. Clark's administrative claims, Feb. 13, 2009
23. Summary of Telephone Interview with Ileana Connally, June 9, 2009
24. Letter responding to Claimants' request for documents for administrative appeal, March 20, 2009
25. Letter requesting further documents for administrative appeal, April 3, 2009
26. Memorandum supporting Claimants' administrative appeal, May 8, 2009
27. Minutes of Appeal Subcommittee meeting, June 23, 2009
28. Michael J. Alderson Report to Appeal Subcommittee, undated
29. Letter from Appeal Subcommittee extending time to make determination, July 1, 2009
30. Wall Street Journal article, March 18–19, 2006
31. Attorney report to the Appeal Subcommittee, July 16, 2009
32. Minutes of Appeal Subcommittee meeting, July 27, 2009
33. Minutes of Appeal Subcommittee meeting, Aug. 25, 2009
34. Reasons for Appeal Subcommittee's denial of Claimant Lanfear, T. Clark and R. Clark's administrative appeal, Aug. 25, 2009

mission ("SEC") filing [Doc. 87–3].[3] Plaintiffs have not challenged the authenticity of this SEC filing, and as it is referenced in or central to the Third Amended Complaint the Court will consider it.

### B. Plaintiffs

Plaintiffs Raymond Lanfear, Terry Clark ("T. Clark"), Randall Clark ("R. Clark"), and Jeffrey Thomson are former Home Depot employees and participants in the Plan [Third Amended Complaint, Doc. 71 ¶¶ 19–23]. Plaintiff Antonio Fierros is a current Home Depot employee and participant in the Plan [Id. ¶ 22]. All Named Plaintiffs were participants in the Plan between June 30, 2001 and December 6, 2006 (the "Class Period").[4] During the Class Period, all Named Plaintiffs acquired and held shares of Home Depot stock through their contributions and/or Home Depot's contributions.[5]

### C. Defendants

Defendant Home Depot is a home improvement retailer claiming to be the world's largest home improvement retailer and the second largest retailer in the United States [Id. ¶ 24]. Home Depot stores sell building materials, home improvement wares, and lawn and garden products; they also provide home improvement related services [Id.]. As of June 2006, Home Depot operated over 2,000 stores in the United States, Canada, and Mexico [Id.]. Throughout the Class Period, Home Depot (through its officers, directors, and executives) was responsible for "selecting the Plan trustee and appointment of the members of the Investment and Administrative Committees." [Id. ¶ 25]. The "Director Defendants," who served on the Home Depot Board of Directors (the "Board") during the Class Period are as follows: Robert Nardelli, Francis Blake, John Clendenin, Milledge Hart, Kenneth Langone, Gregory Brenneman, Claudio Gonzalez, Thomas Ridge, Bonnie Hill, Lawrence Johnston, Laban Jackson, Angelo Mozilo, Helen Johnson–Leipold, Richard Brown, and Berry Cox [Id. ¶¶ 27–30].

Defendant Home Depot FutureBuilder Investment Committee (the "Investment Committee") was comprised of Home Depot officers and employees who were appointed by Home Depot through the Board. The Investment Committee is a named fiduciary of the Plan [Id. ¶¶ 30–31]. Its responsibilities included establishing and reviewing the Plan's Investment Policy Statement, establishing the number and type of investment options or asset classes that the Plan would offer, evaluating and

---

**3.** To their response to the Motion to Dismiss, Plaintiffs attached a 2009 Order from the Southern District of Florida as purported legal authority for the arguments in their response [Doc. 92–2]. Since this attachment is not presented as evidence in this case, the above analysis does not apply.

**4.** The Third Amended Complaint is pleaded as a "class action complaint"; however, Plaintiffs have never moved for certification.

**5.** The Third Amended Complaint states that during the Class Period Plaintiffs Lanfear and T. Clark held shares of Home Depot stock in their "Plan account[s]" and R. Clark, Fierros, and Thomson held shares of Home Depot stock in their "retirement investment portfolio[s]." The relevance of this distinction is unclear. It is also unclear from the Third Amended Complaint precisely when each Named Plaintiff acquired his Home Depot stock and whether he ever sold any portion of that stock.

selecting the Investment Funds[6] within each asset class, reviewing and monitoring the Plan's investment offerings, providing participants with investment education, and communicating and monitoring the reasonableness of expenses paid with Plan assets. The named Defendants who served on the Investment Committee during the Class Period (the "Investment Defendants") are: Carol Tome, Ileana Connally, Rebecca Flick, Steve Taplits, Harry Taylor, Timothy Crow, Dennis Donovan, Frank Fernandez, and Reginald Garrett.

Defendant Home Depot FutureBuilder Administrative Committee (the "Administrative Committee"), was comprised of Home Depot officers and employees who were appointed by Home Depot through its Board [*Id.* ¶ 36]. The Administrative Committee is a named fiduciary of the Plan [*Id.* ¶ 37]. Its responsibilities included managing the operation and administration of the Plan, exercising discretionary authority and control with respect to the Plan's management and administration, and determining questions of eligibility for entitlement to benefits under the Plan [*Id.* ¶ 36]. The named Defendants who served on the Administrative Committee during the Class Period (the "Administrative Defendants") are: Crow, Connally, Flick, Tome, and Fernandez.[7]

### D. *Procedural History*

Plaintiffs originally filed this action in the United States District Court for the Eastern District of New York and the case was transferred to the United States District Court for the Northern District of Georgia. Plaintiffs amended their original

complaint twice and this Court dismissed the Second Amended Complaint for lack of standing to sue under ERISA because Plaintiffs were suing for damages, not benefits, and for failure to exhaust administrative remedies [Doc. 48]. On appeal, considering an issue of first impression, the United States Court of Appeals for the Eleventh Circuit held that a complaint for breach of fiduciary duty that seeks restitution of the diminished value of a defined contribution plan is for benefits, not damages, and is therefore cognizable under ERISA [Judgment of the Eleventh Circuit, Doc. 58 at 4]. The Eleventh Circuit accordingly reversed that portion of this Court's Order, but affirmed this Court's conclusion that Plaintiffs failed to exhaust administrative remedies [*Id.*]. On remand, this Court stayed proceedings in this case so that Plaintiffs could exhaust their administrative remedies [Doc. 65]. A Claim Subcommittee of Home Depot's Administrative Committee conducted a review of Plaintiffs' claims and denied all claims in their entirety [Doc. 71 ¶ 239]. The Appeal Subcommittee of the Administrative Committee subsequently determined that the Claim Subcommittee's conclusion was correct and denied Plaintiffs' appeal [*Id.* ¶ 242].

After exhausting their administrative remedies, Plaintiffs filed the Third Amended Complaint on November 9, 2009. The Third Amended Complaint maintains the same six counts for various breaches of fiduciary duties under ERISA as the Second Amended Complaint, alleging that I) Defendants failed to prudently manage the Plan's assets; II) Defendants failed to provide complete and accurate information to

---

**6.** "Investment Funds" are the "separate funds established by the Investment Committee for the investment of the assets of one or more Participating Plans." [Doc. 71 at 19 n.4].

**7.** Each of the Administrative Defendants are also Investment Defendants.

Plan participants and beneficiaries; III) Home Depot and its Board of Directors failed to monitor appointed plan fiduciaries and provide them with accurate information; IV) Defendants breached their duty to avoid conflicts of interest; V) Home Depot and its officers, directors and executives are liable as co-fiduciaries; and VI) Home Depot knowingly participated in breaching its fiduciary duties.

### E. *Plaintiffs' Allegations*

Specifically, Plaintiffs allege the following. On June 16, 2006, Home Depot announced that top executives had backdated stock option grants in at least five instances prior to December 2001 [*Id.* ¶ 86].[8] On December 6, 2006, a press release was issued describing the results of an internal investigation by Home Depot's Audit Committee, which found that the company had been routinely backdating stock options between 1981 and 2000. This backdating practice caused the underestimation of Home Depot's compensation expenses and a $227 million charge in the company's 2006 consolidated financial statements [*Id.* ¶¶ 87–88]. The Audit Committee's investigation concluded that there had been no intentional wrongdoing [*Id.* ¶ 88].

Before and during the Class Period, Home Depot also entered into vendor agreements to engage in a practice known as return-to-vendor chargebacks ("RTVs") [*Id.* ¶ 111]. An RTV occurs when a vendor supplies a retailer, such as Home Depot, with a defective product and the retailer essentially receives credit from the vendor

for the deficiency. When an RTV is processed, the retailer makes an adjustment to "cost of goods sold" in an amount that offsets the original cost of the product. A legitimate RTV has no impact on a company's financial results. However, Plaintiffs allege that Home Depot fraudulently claimed RTVs for goods that were not defective but were either stolen or ultimately sold to customers. The proper accounting treatment for stolen merchandise cuts into earnings because the company must bear the cost of the loss. Processing stolen merchandise as an RTV, however, effectively covers up that loss. Processing non-defective merchandise which is classified as an RTV allows the company to sell the non-defective product at 100% profit [*Id.* ¶¶ 110–118].

The Third Amended Complaint alleges that various documents and statements support their allegations regarding the RTV scheme. Specifically, an April 19, 2002 internal Home Depot memorandum circulated by Defendant Mercer to Home Depot's store managers and published by the *New York Post* (the "Mercer Memo") discussed the use of RTV chargebacks [*Id.* ¶¶ 119–120]. A February 12, 2004 Home Depot internal memorandum (the "February 12, 2004 memo") also discussed the RTVs. A series of internal memoranda beginning in the summer of 2003 and extending through the end of 2004 discussed overhauling the RTV system and eliminating the RTV chargebacks practices. In October 2004, Home Depot ceased the improper use of RTV chargebacks [*Id.* ¶ 130].

---

8. Backdating occurs when executives backdate their options to an earlier, more advantageous price rather than paying the market price for the option on the date it was issued [Doc. 71 ¶ 89]. A stock option is a right to purchase a particular stock at a fixed price known as the "exercise" or "strike" price [*Id.*

¶ 93]. When the stock market's price exceeds the strike price, the option holder may purchase the stock at the lower strike price and resell it at the higher market price. The Third Amended Complaint alleges that the difference is "paid out from a plan's investment fund." [*Id.*].

On June 23, 2005, a former Home Depot employee filed a complaint [9] with the United States Department of Labor under the employee protection provisions of Title VIII of the Sarbanes–Oxley Act of 2002, 18 U.S.C. § 1514A *et seq.* [*Id.* ¶ 134]. This lawsuit alleged that in 2000, Home Depot instituted a procedure where employees handling RTVs were given forms created by management and instructed to input various product codes for quantities of merchandise that were never defective, damaged, or returned to the store. A different employee apparently filed another lawsuit alleging that Home Depot retaliated against him for refusing to process "fraudulent RTVs." Also in 2005 and 2006, the *New York Post* published a series of articles describing Home Depot's RTV practices and quoting various current and former employees [*Id.* ¶¶ 139–151]. In January 2006, "it was widely reported" that the United States Securities and Exchange Commission ("SEC") had launched an informal inquiry into whether Home Depot used improper RTV chargebacks from vendors to inflate earnings [*Id.* ¶ 152]. The Third Amended Complaint does not state the results of that inquiry.

Plaintiffs allege that the cessation of the RTV practices had a detrimental impact on the company's financial results. In the fourth quarter of 2004, Home Depot's revenue and earnings failed to exceed analysts expectations and "fell short of historical levels." [*Id.* ¶ 131]. Specifically, on February 22, 2005, Home Depot issued a press release stating that its quarterly net profit was $1.04 billion, which met but did not exceed analysts' projections [*Id.* ¶ 132]. Following this announcement, the Company's share price declined: on the last trading day prior to the issuance of the February 22, 2005 press release, Home Depot's share price was $42.02 per share and on February 22, 2005, the share price closed at $40.28. At the close of trading on February 23, 2005, the share price was $39.75, and at the close of trading on April 28, 2005, the share price was $35.09. Plaintiffs assert that throughout the Class Period (June 30, 2001 to December 6, 2006), the price of Home Depot stock was artificially inflated as a direct result of Defendants' misrepresentations regarding Home Depot's financial condition [*Id.* ¶ 213]. If Defendants had "revealed the truth" about Home Depot's financial condition, Plaintiffs contend that they would not have purchased Company Stock or would have purchased shares at much lower prices [*Id.*].

Plaintiffs also allege that there were inaccurate statements in Home Depot's SEC filings [*Id.* ¶ 154]. Plaintiffs claim that several of these forms issued between 2001 and 2004 misrepresented or omitted material adverse facts including the alleged scheme to inflate Company earnings through RTV practices, the inflated revenues and profits due to this scheme, the use of flawed internal controls and procedures, and the violation of Home Depot's ethical code of conduct [*Id.* ¶ 209].

Plaintiffs brought this suit on behalf of all Plan participants and beneficiaries for the Class Period, arguing generally that Defendants violated their fiduciary duties under ERISA by continuing to offer and approve Home Depot stock as an investment option in the Plan and by permitting matching contributions to be made in Home Depot stock rather than cash or other investments, when Defendants knew or should have known about the improper

---

**9.** Apparently a "whistleblower" complaint.

backdating and RTV practices. Plaintiffs also contend that Defendants violated their ERISA fiduciary duties by failing to disclose information to Plan participants regarding the company's allegedly deceitful business practices. Plaintiffs seek relief in the form of a monetary payment to the Plan to make good for losses resulting from the alleged breaches of fiduciary duty "in an amount to be proven at trial," injunctive and other appropriate equitable relief, attorney's fees and expenses, taxable costs, interest, and "such other legal or equitable relief as may be just and proper." [*Id.* ¶ 366].

Defendants move to dismiss the Third Amended Complaint for failure to state an ERISA claim under Federal Rule of Procedure 12(b)(6) [Defendants' Brief in Support of their Motion to Dismiss, Doc. 87–2]. Generally, Defendants argue that Plaintiffs' prudence claim fails because the terms of the Plan required Home Depot stock to be offered as an investment option and ERISA eliminates the duty of prudence to the extent it would obligate fiduciaries to diversify plans such as Home Depot's. Further, Defendants argue that Plaintiffs cannot make the required showing that Home Depot was "teetering on the brink of financial collapse" to support their prudence claim [*Id.* at 2]. Defendants contend, generally, that Plaintiffs' secondary claims fail because they require a much broader application of the fiduciary duty requirements than ERISA provides [*Id.*].

## II. *Discussion*

### A. *Standard of Review*

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." In ruling on the pending motion to dismiss, all of the well-pleaded factual allegations in Plaintiffs' complaint must be accepted as true and construed in the light most favorable to Plaintiffs. *Young Apartments. Inc. v. Town of Jupiter. Fla.,* 529 F.3d 1027, 1037 (11th Cir. 2008). But "unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1036 n. 16 (11th Cir.2001).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations and quotations omitted). More specifically, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quotation omitted). To survive a Rule 12(b)(6) motion, "the plaintiff's factual allegations, when assumed to be true, 'must be enough to raise a right to relief above the speculative level.'" *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1270 (11th Cir.2009) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).

### B. *ERISA*

Congress passed ERISA in 1974, in part, "to establish minimum standards of

fiduciary conduct for Trustees, Administrators and others dealing with retirement plans ... and to improve the equitable character and soundness of private pension plans." H.R.Rep. No. 93–533 (1974), as reprinted in 1974 U.S.C.C.A.N. 4639, 4655. ERISA defines a fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). ERISA fiduciaries are held to the prudent man standard of care, which includes four duties: (1) to act solely in the interest of the participants and beneficiaries; (2) to exercise care, skill, prudence, and diligence; (3) to diversify the investments of the plan to minimize risk of loss unless imprudent to do so under the circumstances; and (4) to act in accordance with the documents and instruments governing the plan unless to do so would violate ERISA. *Id.* § 1104(a)(1).[10]

ERISA contains specific provisions for eligible individual account plans ("EIAPs") such as Home Depot's Plan. An EIAP is an individual account plan which is "(i) a profit-sharing, stock bonus, thrift, or savings plan [or](ii) an employee stock ownership plan," *id.* § 1107(d)(3)(A), and which "explicitly provides for acquisition and holding of qualifying employer securities." *Id.* § 1107(d)(3)(B). Because EIAPs are designed to hold employer securities, they are excepted from ERISA's general prohibition against a plan acquiring or holding such securities in an amount greater than ten percent (10%) of the fair market value of the assets in the plan. *Id.* § 1107(a)(2).

■ For the same reason, EIAP fiduciaries do not have a duty to diversify and do not act imprudently by not diversifying the assets of an EIAP. ERISA explicitly states that "the diversification requirement ... and the prudence requirement (only to the extent that it requires diversification) ... is not violated by acquisition or holding of ... qualifying employer securities." *Id.* § 1104(a)(2).

### C. The Home Depot FutureBuilder Plan (the "Plan")

The Plan is an "eligible individual account plan" ("EIAP") under ERISA, 29 U.S.C. § 1107(d)(3), as well as an "employee stock ownership plan" ("ESOP") under the relevant sections of the Internal Revenue Code[11] [Doc. 71 ¶ 51]. It is a defined

---

**10.** ERISA provides that in the case of a pension plan which establishes individual accounts and allows participants to exercise control over the assets in their account, "no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control." 29 U.S.C. § 1104(c)(1)(B) (2000). Section 1104(c)(1)(B) is in the nature of an affirmative defense and therefore is inappropriate to consider at the motion to dismiss phase. *Woods v. Southern Co.*, 396 F.Supp.2d

1351, 1367 (N.D.Ga.2005) (Story, J.). Defendants did not raise this provision in their Motion to Dismiss and the Court did not consider it in ruling on the motion.

**11.** The Third Amended Complaint states that as of January 1, 2005, "only the Company Stock Fund, and not the Plan in its entirety, is intended to constitute an ESOP as defined in Code Section 4975(e)(7)." [Doc. 71 ¶ 50]. It therefore appears that though the Plan document refers to an apparently separate company contribution as the "ESOP component" of the Plan, at least until January 1, 2005 the

contribution plan [12] that maintains individual accounts for each participant, to which contributions and investment performance are allocated [*Id.*]. Benefits under the Plan are based solely on the amount contributed to the participant's account as well as any income, expenses, gains, and losses, and any forfeitures of other participants' accounts that may be allocated to other participants [*Id.*]. The Plan's assets are held in trust [*Id.* ¶ 60].

The Plan has two related investment components: (1) the "participant contribution component" in which Plan participants make voluntary, pre-tax contributions to the Plan out of their base pay; and (2) the "company contribution component" in which Home Depot matches a portion of the participant's contribution to the Plan [*Id.* ¶ 52]. The Plan also has an "ESOP portion," where contributions are made solely by the company at the Board's discretion [*Id.* ¶ 58]. It appears that the ESOP contributions are separate from the company matching contributions in the company contribution component of the Plan, and Home Depot made its final ESOP contribution in February 1999 [*Id.*]. The Plan contemplates three separate subaccounts for participants, which vest at different times: a company contribution account, a company matching account, and an ESOP account [Plan document, Doc. 71–4 at 45–46].

### 1. *Participant Contribution Component*

This component of the Plan allows qualifying employees to deduct a percentage of their pre-tax salary and invest that money in one of eight different investment funds [Doc. 71 ¶ 54; Summary Plan Description, Doc. 71–6 at 8]. The Plan states:

> In accordance with instructions from the Investment Committee . . . the Trustee shall establish and maintain . . . Investment Funds for the investment of Contributions and Accounts. Such Investment Funds shall include a Company Stock Fund in which all ESOP Contributions at least initially shall be invested and in which all other Contributions may be invested.

[Plan document, Doc. 71–4 at 66].

Participants choose the investments funds in which their contributions and the company matching contributions are invested. The 2005 Summary Plan Description states that "[y]ou can invest the Company's and your contributions in any of the Plan's seven investment funds as well as in The Home Depot Stock Fund." [13] [Doc. 71–6 at 8]. It further states:

> It is up to you to determine which funds are best for you. You may invest in one

---

overall plan was considered an ESOP for tax purposes.

**12.** Within the meaning of ERISA, 29 U.S.C. § 1002(34).

**13.** The Summary Plan Description provides a list of each available investment fund and an explanation of the risk and return associated with each fund, as follows (all excerpted from the Summary Plan Description, attached to the Third Amended Complaint as Doc. 71–6):

*INVESCO Stable Value Fund:* "The fund's managers invest primarily in high-quality, short- to intermediate-term debt obligations that mature within one to three years. . . . Risk and Return. Overall, this fund is the most conservative fund offered through FutureBuilder."

*INVESCO Core Balanced Fund:* This fund "seeks to achieve consistent, moderate returns by investing in a combination of equity and fixed income securities. . . . Risk and Return. This fund offers a moderate amount of risk with the potential for moderate returns."

*Dodge & Cox Stock Fund:* This fund invests in common stocks of companies "that the fund's managers believe to be temporarily undervalued by the stock market but have favorable long-term growth prospects"; typically larger, well-established organizations and some

or as many as all eight of FutureBuilder's investment funds.... Each FutureBuilder fund represents different kinds of investments and has a different objective. Therefore, each offers a different level of risk and return potential.

[*Id.* at 15]. Participants may change the investment of their contributions and their existing account balances as of any "valuation date" [14] [Doc. 71–4 at 39, § 7.3(a), (b) ].

### 2. *Company Contribution Component*

Under the company contribution component, Home Depot makes a matching contribution to the Plan equal to 150% of the first 1% of eligible compensation contributed by a participant, and 50% of the next

mid-sized companies. "Risk and Return. This fund is riskier than the Balanced and Stable Value Funds since it invests exclusively in stocks."

*Barclay's Global Investors (BGI) Equity Index Stock Fund:* This fund invests in each stock that makes up the S & P 500 index, which is the "most widely used benchmark of overall U.S. stock market performance." "Risk and Return. This fund is riskier than the Balanced and Stable Value Funds since it invests exclusively in stocks."

*Artisan Mid Cap Fund:* This fund targets firms that are low-cost providers in an emerging profit cycle and have a dominant market share, proprietary assets, and attractive valuations. "Risk and Return. The Artisan Mid Cap Fund may be appropriate for investors with a long-term time horizon, who are able to tolerate the short-term ups and downs of the market to attempt to earn a higher rate of return over the long term."

*Templeton Foreign Fund:* This fund invests mostly in "stocks with a smaller amount in bonds (typically less than 10%) of a broad range of non-U.S. companies and governments.... [I]t may also invest assets in emerging markets (typically less than 25%).... Risk and Return. This fund poses a higher risk and is potentially subject to more variation in its returns than the prior funds listed since the International Fund invests predominantly in stocks, and it is also subject to individual country and currency risk."

2% to 5% of eligible compensation contributed by a participant [Doc. 71 ¶ 54; Doc. 71–4 at 49, § 3.2]. The matching contribution is invested in any of the eight available funds based on the direction of the participant with investment in Home Depot stock as a default investment if no direction is given [Doc. 71 ¶ 54].

### 3. *ESQP Component*

The Plan states that the company "may, but shall not be required to, make an ESOP Contribution to the Plan.... Each Participant Company shall contribute to the Plan for such Plan Year the same percentage of Compensation of its Eligible Participants for such Plan Year." [Doc. 71–4 at 49, § 3.3]. Further, the Plan states

*T. Rowe Price Small Cap Stock Fund:* This fund invests in smaller, faster-growing companies and focuses on companies that the fund's managers believe offer strong potential earnings growth or are relatively undervalued. "Risk and Return. This fund poses a higher risk and is potentially subject to more variation in its returns than the prior funds listed since it invests predominantly in smaller companies."

*Home Depot, Inc. Common Stock Fund:* "The objective of this fund is to allow FutureBuilder participants to share in ownership of the Company. Risk and Return. Since it invests in only one stock, this fund is subject to greater risk than the other funds in the plan." [Doc. 71–6 at 15–17]. The Summary Plan description further states that "the Company and its affiliates make no guarantee of the performance of any of the investment options offered through FutureBuilder. Sometimes unfavorable market conditions can affect even the most conservative funds." [*Id.* at 15]. It also contains a graphical illustration of the relative risk and return potentials of the eight funds offered, clearly indicating that Home Depot Stock is the riskiest option [*Id.* at 17].

14. Defined as "any day the New York Stock Exchange is open for trading." [Doc. 71–4 at 43].

that "... all ESOP Contributions shall be initially invested in the Company Stock Fund; provided, a Participant or Beneficiary may elect to direct the investment of his existing ESOP Account among other Investment Funds...." [*Id.* at 67, § 7.3(a)].

#### 4. *Structure of the Plan and Trust*

Home Depot is the Plan Sponsor [Doc. 71 ¶ 74]. The assets of the Plan are invested in a Master Trust ("Trust") [*Id.* ¶ 60]. As of December 31, 2005,[15] $2,402,376,292 in net assets were invested in the Trust [*Id.*]. For fiscal year 2005, the Plan held approximately $1.43 billion in Home Depot stock [*Id.* ¶ 62]. During the Class Period, the trustee of the Plan was the Northern Trust Company. The Trustee is responsible for investing assets of the Plan in accordance with the trust agreements and with participants' directions, and for providing valuation statements and transaction listings to the Investment Committee [*Id.* ¶ 61]. The Trustee is also subject to the direction of Home Depot, the Investment Committee, and to the extent applicable under the terms of the Trust Agreement, the directions of the Plan's investment managers and the Administrative Committee [*Id.*]. The Trustee is not a party in this lawsuit.

#### 5. *Investment Committee and Administrative Committee*

The Plan establishes that the Investment Committee is a named fiduciary with respect to its authority and responsibilities, but that it has "no authority or responsibilities other than those granted in the Plan and the Trust." [Plan document, Doc. 71–5 at 14, § 12.3]. Specific responsi-

bilities of the Investment Committee include appointing an investment manager with respect to all or part of the Plan's assets, ensuring that the Plan assets are invested for the exclusive purpose of providing benefits to Participants, defraying reasonable expenses of Plan administration, and employing individuals to render advice with respect to responsibilities carried out by the Investment Committee [*Id.* at 12, § 11.9]. The Investment Committee also has the power to provide the Trustee with general investment policy guidelines and directions respecting investments made under the terms of the Plan [*Id.* at 13, § 11.10].

The Administrative Committee is also a named fiduciary with respect to its authority and responsibilities, but has "no authority or responsibilities other than those granted in the Plan or as imposed as a matter of law." [Doc. 71–5 at 14, § 12.2]. The Administrative Committee's responsibilities include construing the Plan and determining questions arising thereunder, deciding questions relating to participant eligibility, determining participant entitlement to benefits under the Plan, resolving claims for benefits, preparing and furnishing to participants all information required by law, providing the Trustee with employee and contribution data, and preparing all reports and other information required by law [*Id.* at 9–10, § 11.3(a)].

#### D. *Defendants' Motion to Dismiss*

#### 1. *Count I: Prudence Claim*

In Count I, Plaintiffs allege that Defendants breached the fiduciary duty of prudence imposed by ERISA "by continuing to offer Company Stock as an investment

---

**15.** The Third Amended Complaint actually states "as of December 31, 2005 and 2004, there was $2,402,376,292 in net assets invested in the Trust." [Doc. 71 ¶ 60].

option, and [continuing] to make contributions in Company Stock ... when the stock was no longer a prudent investment...." Defendants argue that this claim fails because: 1) it seeks to impose fiduciary liability for investment decisions over which Defendants exercised no discretion; 2) it is barred by ERISA's plain language; and 3) assuming ERISA permits the claim, it fails as a matter of law under the "presumption of prudence" standard adopted by the United States Court of Appeals for the Third Circuit.

■ As an initial matter, Count I cannot proceed against the Administrative Committee and its members in their capacity as Administrative Committee members.[16] The allocation of responsibilities in the Plan document makes clear that the Administrative Committee had no authority with respect to the Plan's investments; this authority was delegated only to the Investment Committee [Plan document, Doc. 71–5 at 9–13, §§ 7.2(a), 11.9(b)(3)]. The Third Amended Complaint states this fact [Doc. 71 ¶ 30]. Though the Third Amended Complaint alleges that the Administrative Committee "managed the operation and administration of the Plan" and "exercised discretionary authority and discretionary control with respect to the management and administration of the Plan and its assets," [Doc. 71 ¶ 36], Plaintiffs do not allege that the Administrative Committee had any authority with regard

to the selection of the Plan's investment funds. *See Pedraza v. The Coca–Cola Co.,* 456 F.Supp.2d 1262, 1273 (N.D.Ga.2006) (Evans, J.) (dismissing an ERISA prudence claim against the members of a Benefits Committee because the plan documents "make clear that the Benefits Committee has no prerogatives regarding selection of the Plan's investments").[17]

■ Defendants argue that ERISA's plain language precludes the prudence claim as to all Defendants. Specifically, Defendants claim that since ERISA has an exception from the prudence requirement to the extent it requires diversification of EIAPs and the prudence claim "hinges" on Defendants' alleged duty to diversify the Plan's holdings, the prudence claim must fail.

Section 1104 of ERISA governs fiduciary duties. It states:

(a) Prudent man standard of care.

(1) ... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circum-

---

16. Each member of the Administrative Committee was also a member of the Investment Committee.

17. Plaintiffs correctly point out that in *Pedraza,* the plan document specifically stated that the Benefits Committee administered the plan "other than with regard to the Plan's investment matters." *Pedraza,* 456 F.Supp.2d at 1273. Here, the Plan document states that "[t]he Administrative Committee shall have

no authority or responsibilities other than as granted in the Plan or as imposed as a matter of law." [Doc. 71–5 at 14, § 12.2]. Since the Plan does not grant the Administrative Committee the authority to manage investment matters, it is clear that the Plan precludes the Administrative Committee and its members from being held liable as fiduciaries with respect to investment decisions.

stances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

(2) **In the case of an eligible individual account plan ... the diversification requirement of paragraph (1)(C) and the prudence requirement (only to the extent that it requires diversification) of paragraph (1)(B) is not violated by acquisition or holding of qualifying employer real property or qualifying employer securities....**

29 U.S.C. § 1104 (emphasis added).

Defendants' argument is that subsection (2) above precludes Plaintiffs' prudence claim because the prudence claim is essentially a claim for failure to diversify. Indeed, as this Court has previously held:

ERISA is clear that, with respect to an EIAP, the diversification requirement ... and the prudence requirement ... [are] not violated by acquisition or holding of ... qualifying employer securities. 29 U.S.C. § 1104(a)(2). Therefore, EIAP fiduciaries do not have a duty to diversify and do not act imprudently by not diversifying the assets of an EIAP.

*In re Groep, N.V. ERISA Litig.*, Civ. Action No. 1:09–CV–0400, 2010 WL 1704402, 2010 U.S. Dist. LEXIS 44238, at *21–*22 (N.D.Ga. Mar. 31, 2010) (Carnes, J.) (internal quotations omitted) (citing *Smith v. Delta Air Lines, Inc.*, 422 F.Supp.2d 1310, 1325 (N.D.Ga.2006) (Evans, J.)). In *Smith*, this Court concluded that § 1104(a)(2) mandated dismissal of a claim that an EIAP's fiduciaries acted imprudently by continuing to offer employer stock as an investment option. Though the plaintiff alleged that the plan's investment in employer stock was imprudent "irrespective of the lack of diversification," this Court concluded that the prudence claim was "[a]t its core ... another form of diversification argument." *Smith*, 422 F.Supp.2d 1310, 1327.

Similarly, here Plaintiffs do not directly allege that Defendants failed to diversify the Plan. However, as in *Smith*, Count I is at its core a diversification claim. In Count I, Plaintiffs allege that Defendants "knew or should have known" that "Home Depot Stock was not a suitable and appropriate investment for the Plan as described herein." [Doc. 71 ¶ 304]. Plaintiffs state that Defendants "permitted Company matching contributions to be made in Home Depot Stock rather than in cash or in other investments" and that "Defendants failed to take any meaningful steps to prevent the Plan ... from suffering losses as a result of the Plan's investment in Home Depot Stock and the Company's matching contributions in Home Depot Stock." [*Id.* ¶¶ 304–305]. The basis of these allegations is that Defendants should have invested and made matching contributions in stock other than Home Depot stock and/or should have eliminated the Home Depot Stock Fund as an investment option; in other words that Defendants should have diversified the Plan's investments. Accordingly, § 1104(a)(2) mandates dismissal of Count I.

However, Plaintiffs contend that Count I is supported by *Moench v. Robertson*, 62 F.3d 553 (3d Cir.1995), in which the Third Circuit declined to literally apply § 1104(a)(2). The Court held that where the ESOP plan required the ESOP committee to invest "primarily" in employer stock, the committee had discretion to invest in non-employer securities (including money market funds or other cash equivalents). The Court held that the committee's failure to invest in something other than employer stock could be actionable, notwithstanding the language of § 1104(a)(2), if the Committee abused its discretion in failing to make other investments. *Moench*, 62 F.3d at 571. An abuse of discretion could occur when the employer stock was declining precipitously, the committee knew that the collapse of the company was impending, and the committee members were conflicted on account of their dual roles as Investment Committee members and directors. *Id.* at 572. The Court reasoned that in such a situation, a fiduciary would realize that the objective of the plan (closer alignment of the interests of employer and employees) had failed and that the settlor of the trust would not expect continued adherence to the trust's directives. *Id.* The Court also held that where a fiduciary is not required to invest in employer securities, the fiduciary is only entitled to a presumption that it acted prudently. *Id.* at 571.

▉ The United States Court of Appeals for the Eleventh Circuit has not had an opportunity to express an opinion on whether the failure to diversify the holdings of an ESOP may give rise to liability, notwithstanding the language of 29 U.S.C. § 1104(a)(2). In the absence of controlling authority, this Court concludes, as it and other Courts have held on numerous occasions,[18] that *Moench* runs afoul of ERISA's plain provisions. ERISA clearly states that in the case of EIAPs, "the diversification requirement ... and the prudence requirement (only to the extent that it requires diversification) ... is not violated by acquisition or holding of ... qualifying employer securities." 29 U.S.C. § 1104(a)(2). "It is well-established that when the statute's language is plain, the sole function of the courts ... is to enforce it according to its terms." *Lamie v. United States*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (internal quotations omitted). *Moench*'s holding defies § 1104(a)(2), mandating diversification in certain circumstances even though ERISA plainly excuses it, and this Court will therefore not follow it.

Having decided to strictly construe § 1104(a)(2), the Court agrees with Defendants that Count I fails to state a claim upon which relief may be granted. Nonetheless, this conclusion would be the same even if *Moench* were adopted by the Eleventh Circuit because *Moench* does not apply to this case since the Plan document mandates that the Plan's investment options "*shall* include a Company Stock Fund."

Here, the Plan states in relevant part:

7.2 *Investment Funds*

(a) *Establishment of Investment Funds.* In accordance with instructions from the

---

18. *See In re Groep*, 2010 WL 1704402, 2010 U.S. Dist. LEXIS 44238, at \*21; *In re Coca-Cola Enters. Inc., ERISA Litig.*, No. 1:06–CV–0953, 2007 WL 1810211, at \*9–10, 2007 U.S. Dist. LEXIS 44991, at \*28–\*32 (N.D.Ga. June 19, 2007) (Thrash, J.) (discussing *Pedraza* and *Smith* and concurring with this Court's determination that the *Moench* standard runs counter to the plain language of ERISA); *Pedraza*, 456 F.Supp.2d 1262, 1275–76; *Smith*, 422 F.Supp.2d at 1329–30.

Investment Committee and the terms of the Plan and the Trust, the Trustee shall establish and maintain, for the investment of assets of the Trust Fund, Investment Funds for the investment of Contributions and Accounts. **Such Investment Funds shall include a Company Stock Fund** in which all ESOP Contributions at least initially shall be invested in and in which all other Contributions may be invested.

[Doc. 71–4 at 66] (emphasis added). Plaintiffs argue that the phrase "at least initially" indicates that the Trustee (through direction by the Investment Committee) had discretion to remove any investment in the Company Stock Fund after the "initial" investment. However, it is clear that the phrase "at least initially" refers only to ESOP contributions, as distinguished from participant contributions and company matching contributions. Moreover, reading § 7.2 in conjunction with § 7.3 makes clear that "at least initially" references the fact that the **Plan participants or beneficiaries** may elect to direct their ESOP contributions into other investment funds; the phrase does not indicate that the Investment Committee had discretion to remove investments in the Company Stock Fund:

7.3 *Participant Direction of Investments*

(a) *Investment of Contributions* .... Notwithstanding anything in this subsection (a) to the contrary, all ESOP Contributions shall be initially invested in the Company Stock Fund; provided, a Participant or Beneficiary may elect to direct the investment of his existing ESOP Account among other Investment Funds in accordance with subsection (b) below.

[*Id.* at 67]. That Defendants lacked the discretion to remove investments from the Company Stock Fund or to eliminate the Company Stock Fund altogether is further emphasized in § 7.2(c), which states:

ESOP Requirement. Notwithstanding anything in the Plan to the contrary, the Plan shall be invested primarily in Company Stock.

[*Id.*].

*Moench* states that where the Plan document requires investment in a company stock fund, a fiduciary's retention of that fund is "immune from judicial inquiry." *Moench*, 62 F.3d at 567 n. 4, 571 ("[W]e are not concerned with a situation in which an ESOP plan in absolutely unmistakable terms requires that the fiduciary invest the assets in the employer's securities."). Likewise, this Court has repeatedly declined to apply *Moench* where the applicable Plan document requires investment in the company stock fund. *See Pedraza*, 456 F.Supp.2d at 1276 n. 21 ("Part of *Moench's* rationale was that the fiduciary had *some* discretion to swap employer stock for other investments. That is not the situation in this case."); *Smith*, 422 F.Supp.2d at 1330 ("Even if the Eleventh Circuit were to adopt *Moench*, this case is distinguishable on its facts ... because the ... Committee did not have the right to prohibit investment in the Delta Common Stock Fund...."). Accordingly, *Moench* does not apply to this case because the Plan document mandates the availability of a company stock fund.

Moreover, even if *Moench* did apply, the presumption of prudence can only be rebutted "in the case of a company on the brink of [financial] collapse." *Pedraza*, 456 F.Supp.2d at 1276; *Smith*, 422 F.Supp.2d at 1332. Plaintiffs have not alleged that Home Depot was on the "brink of financial collapse" at any point during

the class period. Though Plaintiffs do allege that Home Depot's stock declined 16% after the release of its Fourth Quarter 2004 financial results, [Doc. 71 ¶¶ 133, 210–11], this hardly constitutes the "brink of financial collapse" and is a far cry from the facts in *Moench* showing a dramatic downward spiral. *See Pedraza*, 456 F.Supp.2d at 1276 (holding that allegations of various corporate wrongdoings and a stock decline from $66.50 to $40.97 was insufficient to show that a company was on the brink of financial collapse). A 16% decline in Home Depot stock is not dramatic enough to show that the prudent course of action would have been for the Investment Committee to disregard the Plan document to cease matching contributions in Home Depot stock and delete Home Depot stock from the list of available investment funds. As Defendants point out, Home Depot was a financially robust company and its annual revenue and net income doubled during the Class Period. Accordingly, the Court holds that Defendants' Motion to Dismiss Count I of the Third Amended Complaint is granted.

### 2. *Count II: Communication Claim*

In Count II, Plaintiffs allege that Defendants breached their fiduciary duties under ERISA because they "issued a multitude of false and misleading statements through SEC filings and press releases regarding value of Home Depot Stock and the financial health of the Company. Defendants further made material omissions in these communications by failing to disclose any information regarding Home Depot's backdating policy...." [Doc. 71 ¶ 319].

■ As an initial matter, representations made in SEC filings are not actionable under ERISA. *In re Groep*, 2010 WL 1704402, 2010 U.S. Dist. LEXIS 44238, at *23. "Only actions taken as a fiduciary of a plan can give rise to ERISA liability, and preparation of SEC filings is not such a discretionary act." *Id.*, 2010 U.S. Dist. LEXIS 44238, at *24 (citing *Sutton v. BellSouth Telecomms., Inc.*, 189 F.3d 1318, 1321 (11th Cir.1999)). The fact that securities laws require SEC filings to be incorporated by reference into the prospectus for stock issued through an EIAP plan where employer stock is offered as an investment option does not give rise to liability under ERISA. *Id.* (citing *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 257 (5th Cir.2008)).

■ Moreover, Plaintiffs do not allege that Defendants failed to comply with any of the specific disclosure requirements of ERISA; rather, Count II amounts to an allegation that Defendants failed to disclose certain alleged policies that may have had "negative effects" on Home Depot stock [Doc. 71 ¶ 319]. However, "ERISA does not impose an obligation to disclose broad categories of non public financial information regarding publicly traded securities." *In re Groep*, 2010 WL 1704402, 2010 U.S. Dist. LEXIS 44238, at *27 (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 405 n. 15 (6th Cir.1998)). Since Plaintiffs cannot state a claim under ERISA for failure to provide complete and accurate information to plan participants, Defendants' motion to dismiss Count II of the Third Amended Complaint is granted.

### 3. *Count III: Monitoring Claim*

In Count III, Plaintiffs allege that ERISA's duty to monitor includes a duty to inform that required Home Depot and the Director defendants (deemed the "Monitoring Defendants") to alert the Administrative and Investment Committees

of the company's alleged improper business practices [Doc. 71 ¶¶ 329–337]. Defendants argue that since the Monitoring Defendants were responsible for appointing members of the Investment and Administrative Committees and "had direct knowledge of Home Depot's improper business practices" and since the Monitoring Defendants "knew or should have known" that those Committees were continuing to offer Home Depot stock as an investment alternative and continuing to invest Plan assets in Home Depot stock, the Monitoring Defendants breached their fiduciary duties by "failing to take action to protect the Plan" [*Id.* ¶¶ 333–334].

■ The Court disagrees. A "plaintiff cannot maintain a claim of failure to monitor when those to be monitored were acting prudently." *Smith*, 422 F.Supp.2d at 1333. As explained above, Defendants acted prudently as a matter of law when they offered Home Depot stock as an investment option and invested assets in Home Depot stock because they were adhering to the clear terms of the Plan. *See In re Groep*, 2010 WL 1704402, 2010 U.S. Dist. LEXIS 44238, at *28; *In re Coca–Cola Enter.*, 2007 WL 1810211, at *11, 2007 U.S. Dist. LEXIS 44991, at *33–*34 ("Because ... the Plan's investment in CCE stock was prudent as a matter of law ... there can be no cause of action for failure to monitor a fiduciary's conduct with respect to this investment."); *Pedraza*, 456 F.Supp.2d at 1278; *Smith*, 422 F.Supp.2d at 1333 ("Plaintiff cannot maintain a claim of failure to monitor when those to be monitored were acting prudently.").

To the extent that Count III also includes a failure to provide adequate information claim, the claim also fails. As held above, ERISA does not impose a duty to inform of non-public information and the SEC filings are non-actionable. *See In re Groep*, 2010 WL 1704402, 2010 U.S. Dist. LEXIS 44238, at *29; *Pedraza*, 456 F.Supp.2d at 1277–78. The Court therefore holds that Defendants' motion to dismiss Count III of the Third Amended Complaint is granted.

### 4. *Count IV: Conflict of Interest*

In Count IV, Plaintiffs claim that the Director Defendants and other unidentified executives granted and received backdated stock options over a twenty-five year period, and that this "put Defendants in the inherently problematic position of having to choose between their own interests ... and the interests of the Plan's participants and beneficiaries." [Doc. 71 ¶¶ 341–343].

■ To state a claim for breach of the duty of loyalty based on conflicts of interest, plaintiffs must allege a specific conflict and harm resulting from the conflict. *See In re Groep*, 2010 WL 1704402, 2010 U.S. Dist. LEXIS 44238, at *29 (citing *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F.Supp.2d 812, 835 (N.D.Cal.2005) ("No case of which the court is aware has held that ERISA fiduciaries breach their duty of loyalty simply for 'placing themselves in a position' where they might act disloyally[.]")). Plaintiffs' allegations in Count IV fail to meet either requirement.

■ Serving dual roles as corporate officers and plan fiduciaries does not by itself create an actionable conflict of interest under ERISA. *Id.*, 2010 U.S. Dist. LEXIS 44238, at *30 (citing *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 421 n. 6 (4th Cir.2007)). Moreover, the receipt of company stock does not create a conflict: "[a]s opposed to creating a conflict, compensation in the form of company stock

aligns the interests of plan fiduciaries with those of plan participants." *In re Huntington Bancshares, Inc. ERISA Litig.*, 620 F.Supp.2d 842, 849 n. 6 (S.D.Ohio 2009); *see also In re Groep*, 2010 WL 1704402, 2010 U.S. Dist. LEXIS 44238, at \*30–\*31.

Perhaps most importantly, however, the conclusory allegations in Count IV fail to sufficiently allege that the Director Defendants were influenced by the supposed conflict while acting as fiduciaries. The Director Defendants are not named fiduciaries of the Plan and had no fiduciary duties beyond appointing and removing members of the Administrative and Investment Committees [Doc. 71–4 at 40, § 1.56]. Plaintiffs do not allege that the Director Defendants were influenced to appoint or remove Administrative or Investment Committee members because of their alleged conflict of interest. *See Pedraza*, 456 F.Supp.2d at 1282. The Court therefore grants Defendants' motion to dismiss Count IV.

### 5. *Count V: Co–Fiduciary Liability and Count VI: Knowing Participation*

Finally, in Counts V and VI Plaintiffs allege various claims of co-fiduciary and vicarious liability against all Defendants [Doc. 71 ¶¶ 346–357]. However, "A primary breach must exist . . . in order for there to be any liability under [ERISA's co-fiduciary] provision." *In re Groep*, 2010 WL 1704402, 2010 U.S. Dist. LEXIS 44238, at \*32 (citing *In re Coca–Cola Enter.*, 2007 WL 1810211, at \*16, 2007 U.S. Dist. LEXIS 44991, at \*50). Since Plaintiffs have failed to state a claim for any underlying breach of fiduciary duty, Plaintiffs likewise fail to state a claim for co-

fiduciary liability or knowing participation in a breach of fiduciary duty. The Court therefore grants Defendants' motion to dismiss Counts V and VI of the Third Amended Complaint.

### E. *Defendant Nardelli's Motion to Dismiss*

Defendant Nardelli has filed a separate motion to dismiss raising arguments specific to him. He states that he "joins in and incorporates herein by reference the grounds and arguments set forth in the Motion to Dismiss and supporting memorandum filed by The Home Depot, Inc . . . . and the other Defendants. . . ." [Doc. 88–2 at 1]. As the Court has already dismissed the Third Amended Complaint as to all Defendants for failure to state a claim and since Nardelli expressly adopts all of the arguments in the other Defendants' Motion to Dismiss, Nardelli's separate motion is dismissed as moot.

### III. *Conclusion*

For the reasons stated above, Defendants' Motion to Dismiss [Doc. 87] is GRANTED, and Defendant Nardelli's Motion to Dismiss [Doc. 88] is DISMISSED AS MOOT.[19]

---

**19.** Plaintiffs' motion for oral argument [Doc. 106] is accordingly DISMISSED AS MOOT.